Filed 9/13/21  P. v. Koufos CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, | B308387 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA025454) |
| v. |  |
| NICHOLAS RAYMOND KOUFOS, |  |
| Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa Mangay Chung, Judge.  Affirmed.

Spolin Law P.C., Aaron Spolin, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan

Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

Nicholas Raymond Koufos appeals from the trial court's order denying his petition under Penal Code section 1170.95 (Section 1170.95) to vacate his conviction for first degree murder.  We affirmed his conviction in a prior, unpublished opinion.  (*People v. Koufos* (June 1, 2005, No. B174165) [nonpub. opn.] 2005 Cal.App.Unpub. LEXIS 4826.)  In his petition, Koufos alleged he had been convicted under the felony murder rule or the natural and probable consequences doctrine, as required to establish eligibility for relief under Section 1170.95.  In response, the People submitted the jury instructions given at Koufos's trial, which omitted any instruction on the felony murder rule or the natural and probable consequences doctrine.  The jury was instructed on only one theory of first degree murder, viz., premeditation and deliberation, requiring a finding of express malice.  The jury was also instructed on second degree implied-malice murder, which required, inter alia, a finding that Koufos committed an act with "natural consequences" dangerous to human life.

The trial court appointed counsel for Koufos, who filed a reply brief acknowledging that the jury was not instructed on the felony murder rule or the natural and probable

2

consequences doctrine.  The court stated that neither theory had been presented at Koufos's trial, and concluded that he had failed to make a prima facie showing of entitlement to relief.

Koufos contends the trial court erred by denying his petition without ordering an issue to show cause, arguing he made a prima facie showing of eligibility for relief because the jury instructions, by defining implied malice as requiring an act with "natural consequences" dangerous to human life, allowed the jury to convict him of murder under the natural and probable consequences doctrine.  He acknowledges that an identical interpretation of implied malice instructions was rejected in *People v. Soto* (2020) 51 Cal.App.5th 1043, review granted, Sept. 23, 2020, S263939 (*Soto*), which he asserts was wrongly decided.  Finding no error, we affirm.

## BACKGROUND

### A. *Koufos's Conviction*[1]

In 2003, Koufos and several codefendants, including DeWayne Ray Strong, were charged with the murder of Carlos Ochoa.  At Koufos's trial, the prosecution evidence established that Ochoa's body was found in the desert near Lancaster, heavily charred by a fire that appeared to have been deliberately set.  Autopsy results indicated that Ochoa

---

[1]     The facts in this subsection are taken from our prior opinion.  (*People v. Koufos*, *supra*, 2005 Cal.App.Unpub. LEXIS 4826, at *1-*9, *13-*18.)

3

had died from strangulation, and had sustained blunt force trauma. Ochoa's car was reported stolen, and a sheriff's deputy found the car being driven by Koufos's codefendant Strong, with its trunk smelling of gasoline.

The prosecution's principal witnesses, David Valdez and Jonathan Avery, testified as follows: On August 29, 2002, Koufos, Strong, Valdez, Avery, and Ochoa, along with two others, spent time together outside Valdez's trailer. Koufos suddenly placed Ochoa in a "full nelson" grip, and Strong punched Ochoa, knocking him out. Koufos (assisted by Strong, according to Valdez) brought the unconscious Ochoa into the trailer. Strong and the other two men joined Koufos in the trailer. After some minutes (during which Valdez heard a running or pounding noise inside the trailer), Koufos and the other men emerged from the trailer without Ochoa. Although Valdez and Avery did not testify directly to this fact, their testimony and other evidence implied that Koufos or another man placed Ochoa's body in the trunk of his car, which was parked nearby. Koufos and Strong drove Ochoa's car into the desert, followed by the other men (in Avery's car). On the way, Koufos and the other men stopped at a gas station and filled a gas can, which was apparently placed in Ochoa's car. Ochoa's car, occupied by Koufos and Strong, halted at a location in the desert. The men then drove off, and Avery saw a fire nearby.

Another witness, Tonya Downing, testified that Koufos and Strong visited her home in Lancaster on the day they allegedly killed Ochoa, and that Strong, in Koufos's

4

presence, told her "they had to go handle something." They then drove away together. When Downing saw Strong the next morning, he had a bloody, "busted-open" knuckle and smelled as if he had been at a brush fire.

Koufos admitted in his testimony that he accompanied Strong to Downing's home and to Valdez's trailer on the day of Ochoa's death, and that when Ochoa arrived at the trailer, one of the other men made a comment Koufos understood to mean that Ochoa would receive "one hit." Koufos further admitted that he grabbed Ochoa (allegedly at the request of another man), and that after Strong punched Ochoa, Koufos helped carry him into the trailer's back room. Koufos claimed he neither saw nor heard any activity in the back room, as he waited in a separate room. Koufos admitted that after he and the other men drove into the desert in Ochoa's car, he saw Ochoa in the trunk of the vehicle. He further admitted that he and Strong then bought gas and returned to the desert. He claimed another man used the gas to drench Ochoa's body and set it on fire.

During closing arguments, the prosecutor argued at length that Koufos's and Strong's conduct established their shared intent to kill Ochoa. He indicated that Strong's alleged remark to Downing that he and Koufos needed to handle something, though ambiguous, was evidence of premeditation and deliberation. The prosecutor then reaffirmed at length that "even that [remark] aside," Koufos's conduct in conjunction with Strong's, betrayed a "preplanned action," evidenced by their "coordinated actions

without communication" (i.e., Koufos's grabbing Ochoa before Strong knocked him out and immediately thereafter carrying him into the trailer, without discussion).

The jury found Koufos guilty of first degree murder. Koufos was sentenced to 25 years to life in state prison. He appealed the judgment, contending, inter alia, that his trial counsel was ineffective for failing to raise a hearsay objection to Downing's testimony about Strong's alleged remark. We concluded that counsel's performance was not deficient, as the record disclosed a rational tactical basis for the challenged omission. We further concluded that Koufos could not have been prejudiced by his counsel's failure to object to Downing's testimony, explaining, in relevant part: "Downing's testimony suggests that appellant shared Strong's intent to kill Ochoa, and thus it merely corroborates Avery's and Valdez's testimony on this matter. As depicted by Avery and Valdez, appellant was a full participant in Ochoa's killing throughout the crime: appellant placed Ochoa in a full nelson grip while Strong knocked him unconscious; appellant helped carry Ochoa into the trailer; Strong and appellant later drove Ochoa's car -- with Ochoa's body in the trunk -- into the desert; and appellant and Strong were alone with Ochoa's body when the fire was set." We affirmed the judgment.

**B. *Koufos's Petition***

In April 2019, Koufos filed a petition in propria persona for postconviction relief under Section 1170.95.[2] By checking boxes on a form petition, he alleged that he was convicted at trial "pursuant to the felony murder rule or the natural and probable consequences doctrine," and that under the law as modified by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), he could not now be convicted of murder. At his request, the trial court appointed counsel to represent him.

In August 2019, the People filed a response to Koufos's petition, arguing Koufos was ineligible for relief as a matter of law because the jury had not been instructed on the felony murder rule or the natural and probable consequences doctrine. As exhibits, the People submitted our opinion affirming the judgment, the verdict convicting appellant of first degree murder, and the jury instructions given at Koufos's trial. The sole instruction on first degree murder (CALJIC No. 8.20) defined it as murder "perpetrated by any kind of wilfull, deliberate and premeditated killing with express malice aforethought," and provided that a conviction for first degree murder required a finding of "intent on the part of the defendant to kill, which was the result of deliberation and premeditation . . . ." The instruction on malice aforethought (CALJIC No. 8.11) defined express

---

[2]    Koufos filed a substantively identical petition in February 2020.

malice as an intent to kill, and defined implied malice as requiring the following elements: "1. The killing resulted from an intentional act; [¶] 2. The natural consequences of the act are dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." The jury was not instructed on the felony murder rule or the natural and probable consequences doctrine.[3]

In July 2020, through his appointed counsel, Koufos filed a reply in support of his petition. Koufos acknowledged that the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine. He further acknowledged that even after SB 1437's amendments to Penal Code sections 188 and 189, a defendant may be convicted of murder if he was the actual killer *or* a direct aider and abettor. Nevertheless, Koufos urged the court to grant his petition on the ground that the prosecution failed to prove he was the actual killer.

---

[3] The jury received two instructions on aiding and abetting: (1) CALJIC No. 3.00, which provided that principals guilty of a crime include those who aid and abet the crime's commission; and (2) CALJIC No. 3.01, which provided that a person aids and abets a crime's commission when he or she aids, promotes, encourages or instigates its commission by a perpetrator, with knowledge of the perpetrator's unlawful purpose and with the intent to commit, encourage, or facilitate the crime's commission. Neither instruction articulated the natural and probable consequences doctrine, which is the subject of a different CALJIC instruction, viz., CALJIC No. 3.02.

At an August 2020 hearing on the petition, Koufos's counsel stated, "[I]t appears that the prosecution's theory in the matter was [direct] aiding and abetting. It does not appear that natural [and] probable consequences or felony murder were argued. That appears to be the state of the case. I filed an 1170.95 response to the People's reply in the matter. And based upon that, the gentleman would seek relief in the case, but I also understand the state of the law. So submitted." The People submitted on the briefs. The court denied Koufos's petition, concluding he had failed to make a prima facie showing of eligibility for relief because the record of conviction showed that the jury was not instructed on (and the prosecution did not argue) the felony murder rule or the natural and probable consequences doctrine.

## DISCUSSION

### A. *Principles*

"Before [SB] 1437, the felony-murder rule and the natural and probable consequences doctrine were exceptions to the actual malice requirement [for murder liability]. The felony-murder rule made 'a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state.' . . . The natural and probable consequences doctrine made 'a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also for any other offense (nontarget crime) [including murder] committed by

the confederate as a "natural and probable consequence" of the crime originally aided and abetted.'" (*People v. Johns* (2020) 50 Cal.App.5th 46, 57-58.) SB 1437 amended Penal Code sections 188 and 189 to eliminate murder liability under the natural and probable consequences doctrine, and to narrow the felony murder rule. (See *People v. Johns*, *supra*, 50 Cal.App.5th at 58-59; Pen. Code, §§ 188, subd. (a)(3), 189, subd. (e); Stats. 2018, ch. 1015, §§ 2-3).

SB 1437 also enacted Section 1170.95. (See Stats. 2018, ch. 1015, § 4.) This section permits a defendant who was convicted of felony murder or murder under a natural and probable consequences theory, but who could not be convicted of murder following SB 1437's changes to the law, to petition the sentencing court to vacate the conviction. (Pen. Code, § 1170.95, subd. (a).) After ascertaining that the petition includes certain basic information, the court must appoint counsel for the petitioner (if requested), receive the People's response to the petition, allow the petitioner to file a reply, and determine whether the petitioner has made a prima facie showing of entitlement to relief. (*Id.*, § 1170.95, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 960-968 (*Lewis*).) If the court determines the petitioner has made a prima facie showing, it must issue an order to show cause. (Pen. Code, § 1170.95, subd. (c).) If the parties do not thereafter stipulate that the petitioner is entitled to relief, the court must hold a hearing and, if the prosecution fails to prove the petitioner's ineligibility for relief beyond a

reasonable doubt, vacate the petitioner's murder conviction. (*Id.*, § 1170.95, subd. (d).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at 972.) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Id.* at 971.)

### B. *Analysis*

The trial court did not err in denying Koufos's petition without issuing an order to show cause (after allowing Koufos to brief the petition with the assistance of appointed counsel), because the record of conviction refuted Koufos's allegation that he had been convicted under the felony murder rule or the natural and probable consequences doctrine. As Koufos's counsel acknowledged, the jury instructions given at his trial omitted any instruction on either theory. The omission of such instructions established, as a matter of law, that Koufos was not entitled to relief under Section 1170.95. (See *Soto*, *supra*, 51 Cal.App.5th at 1055, rev.gr. ["the jury instructions in this case demonstrate,

11

on their face and as a matter of law, that Soto was not and could not have been convicted of second degree murder under the natural and probable consequences doctrine. This is so because the jurors were not provided any instruction on which they could have found Soto guilty of murder under that doctrine"]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677, review granted Feb. 24, 2021, S266336 ["no instructions were given on felony murder or murder under the natural and probable consequences doctrine. Thus, Daniel is not '[a] person convicted of felony murder or murder under a natural and probable consequences theory,' and he is therefore ineligible for relief as a matter of law" (footnote omitted)].)

The jury's verdict and our prior opinion, considered in conjunction with the jury instructions, confirmed Koufos's ineligibility as a matter of law. Premeditation and deliberation was the only theory of first degree murder on which the jury was instructed. It was also the theory argued by the prosecutor, in principal reliance on Valdez's and Avery's testimony indicating Koufos was a "full participant in Ochoa's killing throughout the crime." In light of the instructions and the prosecutor's argument, the jury's verdict finding Koufos guilty of first degree murder necessarily reflected a finding that Koufos, acting on a premeditated intent to kill, either killed Ochoa or directly aided and abetted the killing. As Koufos's counsel acknowledged, SB 1437 did not affect murder convictions based on such findings. Because Koufos was convicted under a theory that remains valid after SB 1437, he is ineligible for

12

relief under Section 1170.95.  (See Pen. Code, § 1170.95, subd. (a)(3) [petitioner is eligible for relief only if, inter alia, "[t]he petitioner could not [now] be convicted of first or second degree murder because of changes to Section 188 or 189 made [by SB 1437]"].)[4]

Koufos suggests the jury might have convicted him under the natural and probable consequences doctrine pursuant to the pattern instruction on malice aforethought (CALJIC No. 8.11), seizing on this instruction's reference to the "natural consequences" of his acts in defining implied malice.  In so doing, Koufos not only overlooks the jury's finding of express malice, but also misrepresents the relationship between implied malice and the natural and probable consequences doctrine.  At Koufos's trial, the sole jury instruction on first degree murder defined it as murder "perpetrated by any kind of willful, deliberate and premeditated killing with *express* malice aforethought . . . ."

---

[4]     Koufos emphasizes another condition for relief under Section 1170.95, viz., that "[a] complaint, information, or indictment was filed against the petitioner that *allowed* the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine."  (Pen. Code, § 1170.95, subd. (a)(1), italics added.)  It is immaterial whether this single condition was satisfied.  The record of conviction showed that the prosecution did not proceed under either specified theory, regardless of whether it had been allowed to do so, and that Koufos was instead convicted under a theory that remains valid after SB 1437, rendering him ineligible for relief under Section 1170.95.  (See *id.*, § 1170.95, subd. (a)(3).)

(Italics added.)  By convicting Koufos of first degree murder, the jury necessarily found he acted with express malice, rendering CALJIC No. 8.11's definition of implied malice immaterial.  (Cf. *People v. Jackson* (1989) 49 Cal.3d 1170, 1199 ["in view of the jury having found a premeditated, deliberate, first degree murder, any error in failing to instruct on implied-malice second degree murder would clearly be harmless"].)  In any event, CALJIC No. 8.11 did not allow the jury to convict Koufos under the natural and probable consequences doctrine, which imposes vicarious liability on a defendant for the unintended consequences of the acts of another, by defining implied malice with reference to the "natural consequences" of Koufos's *own* acts.  (See *People v. Daniel*, *supra*, 57 Cal.App.5th at 677, fn. 4, rev.gr.; cf. *People v. Clements* (2021) 60 Cal.App.5th 597, 618, review granted April 28, 2021, S267624 ["Though [SB 1437] abolished the natural and probable consequences doctrine, it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged"].)  We agree with *Soto* on this point. (See *Soto*, *supra*, 51 Cal.App.5th at 1059, rev.gr. ["The 'natural consequences' language in the instruction for second degree [implied-malice] murder does not transform Soto's conviction [for such murder] into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95"].)

In sum, as Koufos's counsel implicitly conceded at the hearing on his petition, the record of conviction refuted his

allegation that he had been convicted under the felony murder rule or the natural and probable consequences doctrine. Absent that predicate, Koufos could not make a prima facie showing of eligibility for relief under Section 1170.95. (See *Lewis*, *supra*, 11 Cal.5th at 971-972.) Accordingly, the trial court did not err in denying Koufos's petition without issuing an order to show cause.

## DISPOSITION

The order denying Koufos's petition for relief under Penal Code section 1170.95 is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, P. J.


We concur:


COLLINS, J.


CURREY, J.


16